UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN H. HALL,<br><br>    Plaintiff,<br><br>v.<br><br>ELAINE C. DUKE, ACTING SECRETARY OF HOMELAND SECURITY; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | Civil Action No. 17-cv-1469 (TSC) |

## MEMORANDUM OPINION

Plaintiff Steven Hall, proceeding *pro se*, is a former employee of the Department of Homeland Security ("DHS"). He brings this suit challenging the rescission of his Workers' Compensation benefits and his termination from federal service. (ECF No. 9 ("Am. Compl.") ¶¶ 2–3.) Defendants have moved to dismiss Plaintiff's amended complaint in its entirety (ECF No. 17); and Plaintiff has filed two "motions not to dismiss" the case (ECF Nos. 21 and 22). On March 31, 2019, this court issued an Order **GRANTING** Defendants' motion to dismiss and **DENYING** Plaintiff's motions not to dismiss. (ECF. No. 29.) This Memorandum Opinion explains the court's reasons for that Order.

### I. BACKGROUND[1]

Plaintiff, an African-American male and a disabled veteran, began working for DHS on August 2, 2010. (Am. Compl. ¶ 1.)

---

[1] Unless otherwise indicated, the following facts are taken from the Amended Complaint and the exhibits attached thereto, and are assumed to be true for the purposes of deciding Defendants' motion to dismiss and Plaintiff's motions not to dismiss.

1

In August 2012, Plaintiff suffered from "illnesses/injuries" at a construction site at St. Elizabeth's Hospital, where he presumably was assigned to work. (*Id.* ¶ 2.) On November 20, 2012, he filed a claim with the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). (*Id.* ¶ 1.) His request for benefits was approved in January 2013. (*Id.*)

By letter dated January 22, 2013, Gary Myers, a DHS Program Manager/Policy Advisor, requested that the OWCP overturn its decision and preclude Plaintiff from receiving benefits due to an insufficient causal link between Plaintiff's job placement at St. Elizabeth's and his respiratory issues. (*Id.* Ex. 6.) Plaintiff alleges that attached to Myers' letter was an air quality report that was "biased, untimely, and inconclusive." (*Id.* ¶¶ 2, 5.)

In February 2013, Plaintiff again suffered from "illnesses/injuries" at the St. Elizabeth's construction site. (*Id.* ¶ 2.) In April 2013, OWCP awarded Plaintiff $30,000 as compensation for the "work-related injury/illness." (*Id.* ¶ 1.) In May 2013, DHS again challenged the benefits paid to Plaintiff, and on June 10, 2013, OWCP rescinded Plaintiff's benefits, and Plaintiff's status with DHS changed to Absent Without Leave ("AWOL"). (*Id.* ¶¶ 1, 2, 5.) On November 18, 2013, Plaintiff was terminated because he had been marked as AWOL for an extended period of time. (*Id.* ¶¶ 3, 5.)

Prior to his termination, on May 20, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 4.) Plaintiff alleges that from the time he filed his complaint until the date he was terminated, the EEOC took no action to address his complaint. (*Id.* ¶ 4.a.) In response to the EEOC's inaction, on March 22, 2015, Plaintiff sent an addendum as a "courtesy to inform the agency that no actions were taken to resolve his EEO complaints." (*Id.* ¶ 4.b.) On August 28, 2015, the EEOC dismissed Plaintiff's complaint as untimely. (*Id.* ¶ 4.c.)

According to documents submitted with a supplement to Plaintiff's response, Plaintiff settled his claims against DHS in an agreement dated November 23, 2015.[2] (*See* ECF No. 22 ("Pl.'s Corrected Mot. Not to Dismiss") Ex. 14.) It appears that, since that date, notwithstanding the settlement, Plaintiff has continued to challenge the EEOC's determination that his complaint was untimely in several forums. (*See e.g.*, Am. Compl. ¶¶ 4.e.–j; Exs. AA, 7, 8.)

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases). Rule 12(b)(6) permits a party to move to dismiss on the grounds that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff's factual allegations need not establish all elements of a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F.Supp.2d 25, 28–29 (D.D.C. 2010), but they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). A complaint containing only "[t]hreadbare

---

[2] As will be discussed below, Plaintiff disputes a section of this agreement.

3

recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. In addition, the presumption of truth accorded factual allegations at this stage does not apply to a plaintiff's legal conclusions in the complaint, including those "couched" as factual allegations. *Id.* (quoting *Twombly*, 550 U.S. at 555).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corp. Office & Headquarters*, 19 F.Supp.3d 321, 324 (D.D.C. 2014). Therefore, "'where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment. . . Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. . . Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Strumsky v. Washington Post Co.*, 842 F.Supp.2d 215, 217–18 (D.D.C. 2012) (citations and quotations omitted); *see also Long v. Safeway, Inc.*, 842 F.Supp.2d 141, 144–45 (D.D.C. 2012), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012).

Finally, the court is mindful that *pro se* pleadings must be liberally construed, as they are held to "less stringent standards than formal pleadings drafted by trained lawyers." *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F.Supp.2d 5, 11 (D.D.C. 2013) (quoting *Erickson*, 551 U.S. at 94) (internal quotation marks omitted). However, this liberal standard "is not . . . a license to ignore the Federal Rules of Civil Procedure." *Neuman v. United States*, 70 F.Supp.3d 416, 422 (D.D.C. 2014) (internal citations and quotation marks omitted). Accordingly, "[a] pro se complaint, like any other, must present

4

a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).

## III. ANALYSIS

Plaintiff's Amended Complaint does not provide clarity regarding the claims he seeks to bring. However, in his motion not to dismiss, Plaintiff makes clear that the crux of his action pertains to Defendants' alleged discriminatory and retaliatory conduct that occurred in connection with the denial of Plaintiff's benefits and his subsequent termination. (*See e.g.*, ECF No. 21 ("Pl.'s Mot. Not to Dismiss") at 6 ("DHS Management discriminated; retaliated and treated Plaintiff unfairly during the process and before his claims for FECA benefits were rescinded on June 10, 2013."); 7 ("DHS retaliated against Plaintiff after he requested workers' compensation benefits for which [sic] was granted by OWCP in January 2013. On April 26, 2013, DHS received Plaintiff's CA-7 claim for benefits and retaliated by informing OWCP that he threatened employees."); 8 (describing discrimination he endured regarding his disability and in connection with his employment); 9 ("DHS Leadership did not hold Plaintiff's former supervisor accountable for retaliation."); 10 ("Plaintiff timely filed a complaint of discrimination regarding overt and covert racism by DHS Caucasian . . . Plaintiff's wrongful termination from Federal service was retaliation."); 11 (noting that DHS ignored his medical conditions, denied him reasonable accommodation, and retaliated against him in a manner that led to his termination).[3] Plaintiff

---

[3] Plaintiff's "Argument and Cause of Actions" heading contains two main headings—"Plaintiff's Claim of Worker's Compensation Discrimination" and "Plaintiff's Title VII claim." (Pl.'s Mot. Not to Dismiss at 6, 10.) The first main heading contains the following subheadings: "Retaliation," "Disability Discrimination," "Employment Discrimination," "Collusion," "Double Standard Discrimination," and "MSPB and EEOC pending cases." (*Id.* at 6–11.) The second main heading does not contain any subheadings. Because some of the subheadings under "Plaintiff's Claim of Worker's Compensation Discrimination" do not correlate with a cause of action, the court looked to the text under each heading to discern the nature of Plaintiff's claims.

states that he is not resurrecting his Federal Employees' Compensation Act ("FECA") claim[4] but filing this complaint to "highlight discrimination against him." (*Id.* at 9.) Upon review of Plaintiff's discrimination and retaliation claims, the court finds that they are precluded by the settlement agreement.

A settlement agreement pertaining to discrimination and retaliation claims is sufficient to bar subsequent litigation of those claims. *See Johnson v. Veneman*, 569 F. Supp. 2d 148, 154 (D.D.C. 2008) ("A settlement agreement concerning Title VII claims is sufficient to bar subsequent litigation of those claims."); *Johnson v. Washington Gas Light Co.*, 404 F. Supp. 2d 179, 181 (D.D.C. 2005) (finding that plaintiff released his ability to pursue claims of discrimination under Title VII and the ADA when he signed a settlement agreement and received the benefit of the agreement). However, the agreement must be entered into "knowingly and voluntarily," meaning it is "executed freely, without deception or coercion with a full understanding of what rights are being waived." *United States v. Trucking Emp'rs, Inc.*, 561 F.2d 313, 318 (D.C. Cir. 1977) (alterations omitted).

Here, Plaintiff entered into a settlement agreement "resolving all claims, issues, and causes of action raised or which could have been raised between Steven H. Hall [] and the Department of Homeland Security [] up to the date of [the] Agreement." (Pl.'s Corrected Mot. Not to Dismiss Exhibit 14 at 8.) In exchange for $55,000, Plaintiff agreed that he

> settles, releases, relinquishes, waives, and forever discharges [DHS] from any and all demands, rights, claims, or causes of action for any kind of relief whatsoever whether before any forum . . . or court which he has raised, or which he may raise, and which arise out of, or are in any manner connected with, or related to [his] appeal and other matters referenced in Paragraph 1.b, above. [He] agrees not to institute any lawsuit, complaint,

---

[4] Plaintiff's FECA claim against the Department of Labor was dismissed because "[j]udicial review of determinations under FECA are precluded under 5 U.S.C. § 8128(b)." *Hall v. Dep't of Labor*, 289 F. Supp. 3d 93, 99 (D.D.C. 2018), *aff'd sub nom. Hall v. United States Dep't of Labor*, No. 18-5100, 2018 WL 5919255 (D.C. Cir. Nov. 1, 2018). Plaintiff's claims were neither "structural" nor "systemic" challenges that would have "overcome FECA's bar to judicial review." *Id.* (quoting *Lepre v. Dep't of Labor*, 275 F.3d 59, 68 (D.C. Cir. 2001)).

grievance, appeal, or other action against [DHS] based on any matter which is the subject of the above-referenced Appeal and other matters referenced in Paragraph 1.b., above or concerning any matter which could have been the subject of the Appeal or other matter referenced in Paragraph 1.b, above, up to and including the date when all parties have executed this Agreement.

(*Id.* at 9–10.) Plaintiff also agreed that he entered the agreement knowingly, voluntarily, and with full knowledge of its terms, and absent any coercion or duress. (*Id.* at 10.)

The discriminatory and retaliatory conduct that Plaintiff presents to this court not only pre-dates the settlement agreement, but also is explicitly mentioned in actions that were cross-referenced in the settlement agreement. For example, ¶ 1(b) of the settlement agreement mentions EEO Complaint No. HS-HQ-23609-2015. (*Id.* at 9.) In that complaint, Plaintiff alleged that DHS "discriminated against him on the bases of race, sex, color, disability and in reprisal for prior protected EEO activity." (Am. Compl. Ex. AA at 1.) He also mentioned the efforts taken to have his workers' compensation benefits rescinded and the decision to place him on AWOL status, which led to his termination. (*See id.* at 2.) Thus, this court finds that Plaintiff's claims are covered by the settlement agreement.

Plaintiff's claim that the settlement agreement was fraudulently manipulated after he signed it, (*see* Pl.'s Corrected Mot. Not to Dismiss at 1), does not establish that he did not enter into the relevant portion knowingly and voluntarily. Plaintiff alleges that language was added to ¶ 1(g) of the settlement agreement after he signed it. (*Compare* Pl.'s Corrected Mot. Not to Dismiss Ex. 14 at 10, *with* ECF No. 17-4 ("Defs.' Ex. 2").) However, even if the change to ¶ 1(g) occurred,[5] it would not affect the waiver

---

[5] Plaintiff's assertion that he was not aware of the additional language in ¶ 1(g) of the Settlement Agreement is called into question by an exhibit attached to his Motion Not to Dismiss. Exhibit 7 is a June 23, 2016 Merit Systems Protection Board decision regarding whether Plaintiff was misled about his rights under ¶ 1(g). (Pl.'s Mot. Not to Dismiss Ex. 7.) According to the decision, Plaintiff stated that he "signed the settlement agreement based on the understanding that [he] could revoke the agreement seven days after signing it according to the Older Workers' Benefit Act." (*Id.* at 3–4.) He then timely requested to revoke the agreement, but subsequently told the administrative judge, "I wish to go forward with the agreement after carefully considering my options." (*Id.* at 4.) It strains credulity for Plaintiff to

7

of Plaintiff's rights. Indeed, the portion of the paragraph that Plaintiff states he did not know about afforded him twenty-one days to consider the agreement before signing, and seven days to revoke after signing. (*See* Defs.' Exhibit 2 at 3.) It had no bearing on the other portions of the agreement, discussed above, that included the waiver of Plaintiff's claims. Thus, using the version Plaintiff claims he signed knowingly and voluntarily, his discrimination and retaliation claims before the court are still barred.

Accordingly, Plaintiff's complaint alleging that Defendants engaged in discriminatory and retaliatory conduct must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is hereby GRANTED; and the motions not to dismiss are hereby DENIED.

A corresponding order will issue separately.

Date: April 15, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

claim he believed that the version he signed did not include the ¶ 1(g) language that he once said was material to his decision to sign the settlement agreement.